[Sac. No. 731. Department One.—May 25, 1900.]

## D. H. ARNOLD, Respondent, v. PRODUCERS' FRUIT COMPANY, Appellant.

Contract of Fruit Company with Fruit Growers—Several Right of Action for Breach.—A contract between a fruit company and a number of fruit growers to receive and dry and market their crops in the most approved manner, at specified rates per pound, under which the fruit delivered by each fruit grower was weighed and dried separately, and weighed again to the owner, and then mingled with other fruit, and a receipt given to the owner for so many pounds in bulk, is a several contract with each fruit grower, and each has a several right of action against the fruit company for breach of its contract.

Id.—Commingling of Dried Fruit—Ownership in Common.—The commingling of the dried fruit had no effect upon the title of the several owners, other than simply to convert it into an ownership in common.

Id.—Negligence in Drying and Handling Prunes—Evidence—Bad Condition of Prunes in Bins—General Negligence.—In an action by a fruit owner whose interest is an undivided third of dried prunes commingled in bins, charging negligence of the defendant in drying, curing, packing, and handling plaintiff's prunes, evidence is admissible to show the bad condition of the fruit in the bins, and the causes of its deterioration, and to show general negligence in the drying process of the commingled fruit, before it was commingled.

ID.—MEASURE OF DAMAGE TO COMMINGLED FRUIT.—Where damaged fruit is commingled with the knowledge and consent of the parties, the measure of damage to each owner of an undivided share thereof is his proportion of the aggregate damage to the commingled mass.

ID.—CONSTRUCTION OF CONTRACT—"MOST APPROVED MANNER"—METHODS IN GENERAL USE—"GREEN GRADING" OF PRUNES—IMPROPER RULINGS UPON EVIDENCE.—The provision of the contract that the fruit should be handled and marketed "in the most approved manner" is to be construed as referring simply to the methods most generally used by competent men in the trade of fruit drying, though they may not be the best methods obtainable, or secure the best results; and it is erroneous to permit proof that the process known as the "green grading" of prunes was the best process, and to exclude evidence that more men in the state who handle and dry large quantities of prunes do not adopt the process of "green grading" than those who do.

ID.—FIGURES GIVEN TO WITNESS BY ACCOUNTANT—REFUSAL TO STRIKE OUT—ERROR DEEMED MATERIAL.—The testimony of the plaintiff as a witness to a balance of account of which he had no personal knowledge, the figures of which were given to him by an accountant, should be stricken out, and the refusal to strike it out is to be deemed material error, where the record does not clearly show otherwise.

ID.—CONVERSION OF FRUIT—REJECTION OF REFUSE.—The fruit company is not liable for a conversion of fruit consisting only of the rejection of refuse fruit which was authorized by the terms of the contract.

EVIDENCE—GENERAL OBJECTION.—Where evidence is inadmissible for any purpose, the general objection that it is immaterial, irrelevant, and incompetent is sufficient.

APPEAL from an order of the Superior Court of Colusa County denying a new trial.  H. M. Albery, Judge.

The facts are stated in the opinion.

B. F. Howard, and W. G. Dyas, for Appellant.

E. T. Crane, and U. W. Brown, for Respondent.

SMITH, C.—Action for breaches of contract, between plaintiff and defendant, of date June 17, 1897, by which, as alleged, "said defendant agreed to receive from said plaintiff at the town of Colusa . . . . certain fruit, to wit, prunes, and to dry, cure, pack, carefully handle, and market the same in the most approved manner, for the account of the said plaintiff, for the

compensation in said contract provided, and by which said contract said plaintiff agreed to pay to said defendant the certain compensation for said services in said contract specified."

Three breaches of the contract by the defendant are alleged in as many counts—namely: 1. Lack of "due diligence, skill, and care in drying, curing, packing, and handling . . . . fruit" delivered by plaintiff to defendant under the contract; 2. Failure to pay over part of the money received from sales; and 3. The conversion by defendant of fruit delivered under the contract.

The verdict was for the plaintiff—on the first count for $716, on the second for $153, and on the third count for $100. There was also a fourth count, but the verdict on this was against the plaintiff. The appeal is from an order denying a new trial. The points of error assigned are: 1. Nonjoinder of parties plaintiff; 2. Erroneous rulings on evidence; and 3. Erroneous instructions.

1. The first point turns on the construction of the contract between plaintiff and defendant. The contract is signed by the plaintiff and twenty-four other fruit growers; and it is claimed by the defendant that it is a joint contract, and that, consequently, all the parties of the second part should have been joined as plaintiffs. On this point the material portions of the contract are as follows:

"Memorandum of agreement made and entered into this seventeenth day of June, A. D. 1897, by and between the Producers' Fruit Company of Sacramento city, California, a corporation, party of the first part, and the undersigned fruit growers of Colusa county, parties of the second part;

"Witnesseth: that the said parties of the first part will receive at the Colusa cannery, located at Colusa, California, for drying purposes, peaches, apricots, pears, and prunes, and agree to dry the same for the parties of the second part, and charge therefor the actual expense of drying, curing, and packing said fruit. It being understood and agreed that such expense for drying, curing, and packing as aforesaid shall not exceed two and one-half (2½) cents per dried pound for peaches and apricots, one-half (½) cent per dried pound for prunes, and two (2) cents per dried pound for pears.

"The said party of the first part hereby agrees to advance all money necessary for drying, packing, and handling said fruit, and charge the same against the fruit delivered and dried, deducting the same *pro rata* from the sales of the fruit according to the amount of dried fruit each individual may have, as compared to the total amount dried, including a commission of five per cent on the gross sales of such fruit when sold, and interest as hereinafter provided.

"In consideration of the foregoing, the parties of the second part hereto hereby agree and bind themselves to deliver to the said party of the first part, at the Colusa cannery and drying grounds aforesaid, in good condition and suitable for drying, all their peaches, apricots, prunes, and pears for the season of 1897. The parties of the second part further agree that all said fruit shall be placed in the hands of the parties of the first part for sale and marketed through said party of the first part within sixty (60) days after the same is cured and ready for market; reserving, however, the right to any fruit grower to sell his own fruit, within the time above specified, provided such sale shall be made through the Producers' Fruit Company, who shall receive five per cent commission thereon. . . . .

"It being understood and agreed by and between the parties hereto that, unless otherwise specifically instructed by the owner, said Producers' Fruit Company shall have the selection of packages in which fruit shall be marketed. . . . .

"The Producers' Fruit Company shall be entitled to interest at the rate of eight per cent per annum for all advances made by it for drying, packing, and handling said fruit from the date of such advances until repayment or sale of fruit shall have been made. . . . .

"The Producers' Fruit Company further agrees that all fruit delivered to it for drying and marketing as aforesaid shall be carefully handled and marketed in the most approved manner."

Signed by Producers' Fruit Company and by twenty-five parties of the second part, including plaintiff.

In the years 1897 and 1898 the plaintiff and others of the parties of the second part delivered to the defendant their several crops of prunes to be disposed of as provided in the contract. The fruit, as delivered by each party, after being

weighed, was dried separately, and then, after being graded into several sizes, weighed again to the owner. After which it was mingled with the other fruit in the bins used for the purpose, and a receipt given to the owner calling for so many pounds in the bulk.

From the above statement it is clear that the contract is several. For not only is a separate accounting with each of the parties of the second part required, but the ownership of each of the growers of the fruit delivered by him, or of his portion of the common bulk after commingling, is recognized throughout the contract. (17 Am. & Eng. Ency. of Law, 566, and cases cited; *Hall v. Leigh*, 8 Cranch, 50; *Shipman v. Straitsville etc. Min. Co.*, 158 U. S. 356.) The commingling of the fruit had no effect upon the title of the several owners other than simply to convert it into an ownership in common. (Civ. Code, sec. 1030; Abbott's Law Dictionary, tit. "Confusion of Goods.")

2. The evidence objected to relates principally to the first cause of action. With reference to this, witnesses testified as to the bad condition of the fruit in the bins, and to the causes of the deterioration—the purpose and effect of the evidence being to show negligence on the part of the defendant. The plaintiff was the owner of about a third of this fruit only; and it was objected that evidence of the condition of the fruit in general was not competent to prove negligence in the handling of plaintiff's fruit. But as plaintiff's interest, at the times referred to, was an undivided interest in the whole, the testimony was clearly admissible.

The same objection was interposed to other testimony tending to show negligence in the drying process, which took place before the commingling of the fruit; and this testimony referred, not to plaintiff's fruit in particular, but to the fruit of all the parties generally. But, as it was contemplated that the fruit should be commingled, or, at least, as it was in fact commingled, with the knowledge and consent of the parties, the same rule must apply. For it is clear that whatever may have been the difference of negligence, or of damage with reference to the fruit of the several parties before commingling, this would become common to the mass when commingled; and thus

CXXVIII. CAL.—41

the damage to each would be simply his proportion of the aggregate damage.

The agreement of the defendant required that all fruit delivered to it under contract should "be carefully handled and marketed in the most approved manner"; and as bearing on this point two of the plaintiff's witnesses, Gray and Paul, were asked, in effect, whether better results would be had from green grading, or not green grading prunes, and both testified in effect that the former is the best process. This testimony was objected to by the defendant "as incompetent, irrelevant, and immaterial." The witness Paul was then asked, by defendant's counsel, whether it was not "a fact that more men in the state of California, who handle and dry large quantities of prunes, do not adopt the process of green grading than those who do"; and on objection this was ruled out by the court, on the ground that "a majority cannot decide whether it is the best method or not." Green grading, it will be understood, is a process by which the prunes are run through a machine, and the smaller separated from the larger ones before they are put out to dry. These rulings of the court involve a construction of the contract which cannot be maintained.

The provision that the fruit should be handled and marketed "in the most approved manner" refers simply to the methods most generally used by competent men in the trade of fruit drying, and these may or may not be the best methods attainable, or necessarily the methods that will produce the best results. The rulings objected to are therefore erroneous, and it is very clear that they may have very seriously influenced the jury in arriving at their verdict.

With regard to the second cause of action, it appears from the pleadings that plaintiff's fruit had been sold by defendant for the sum of $3,074.09; and that plaintiff had received on account $1,623.48, leaving a balance of $1,450.51, which had been charged against him by defendant for expenses. Of this, it was admitted, the sum of $1,144.50 was a legitimate charge, and "that the only other expenses paid and incurred by the defendant for plaintiff on said fruit were the following items, to wit: For dry grading said fruit after the same was dried, and before it was put in the bins and before packing, $72.31; for redipping

in January, 1898, after the fruit had been put into the bins and just before it was packed, $136.32; and for shoveling said fruit after it was put into bins and before it was packed, $30.50; and that the only issue between the parties under the second cause of action was whether the said last-mentioned items of $72.31, $136.32, and $30.50 were properly chargeable by defendant against plaintiff under the terms of said contract, in addition to the charge of $723.31, . . . . being the limit of one-half cent per dried pound for drying, curing, and packing said prunes, chargeable under said contract."

Under this state of the issues the plaintiff testified generally that there remained due to him from the defendant the sum of $311.38, but on cross-examination it appeared that this was simply the balance given him by an accountant, and that he had no personal knowledge of the matter. Defendant's counsel then moved to strike out the testimony, and the motion was overruled and an exception taken. This was clearly error, but it is claimed by plaintiff's counsel that the facts stipulated were sufficient to support the verdict of the jury, and the error was therefore immaterial. The claim is that the three items mentioned in the stipulation all come within the provision of the contract fixing a limit of one-half cent per pound for "the actual expense of drying, curing, and packing said fruit." But, as the transcript does not contain all the evidence, we cannot say, as a matter of law, that these items are thus included. For though, in the absence of any evidence of custom or other circumstances bearing upon the question, we might be inclined to hold that these items, or some of them, come within the provision of the contract alluded to, we cannot say that a different meaning might not be put upon them by such evidence. Nor can we tell on which of these items the verdict of the jury is founded; and one of them at least, namely, the first, may be a proper charge. We cannot say, therefore, that the error is immaterial.

With reference to the third cause of action the allegations are in effect that fruit was delivered to the defendant under the contract, and that of the fruit thus delivered a certain quantity was unlawfully converted by the defendant to its own use. On this point witnesses for plaintiff were asked, in effect, whether they knew of any of the fruit being taken away by any parties,

or hauled away from the cannery building, and answered in the affirmative. This fruit, it appeared from questions asked the witnesses and their testimony, was rejected from the cannery building in the process of curing as refuse. The evidence was objected to as immaterial, irrevelant, and incompetent. But the defendant was clearly authorized under the terms of the contract to reject refuse fruit, and if this power was rightly exercised there was no conversion. The mere fact that some fruit was rejected on this account was therefore incompetent as proof of conversion, and the evidence should therefore have been excluded; and, as the evidence was inadmissible for any purpose, the general objection to it was sufficient.

The objections to the instructions complained of are principally based upon the theory of the defendant that the contract is joint; but, as we have concluded that this is not the case, it follows that the objections are untenable.

We therefore advise that the order denying the motion for a new trial be reversed and the cause remanded for further proceedings.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order denying the motion for a new trial is reversed and the cause remanded for further proceedings.
     Van Dyke, J., Harrison, J., McFarland, J.

Hearing in Bank denied.